**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**LOUIS DEL FAVERO ORCHIDS, INC,**
**a Florida Corporation,**

        **Plaintiff,**

**vs.**                                  **Case No.:**


**SCOTT RIVKEES, individually and in his official**
**capacity as Surgeon General and Secretary of the**
**FLORIDA DEPARTMENT OF HEALTH;**
**CHRISTIAN BAX, individually;**
**COURTNEY COPPOLA, individually;**
**LOUISE ST. LAURENT, individually;**
**CELESTE PHILLIP, individually;**
**JOHN DOE # 1-11; individually,**

        **Defendants.**

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Louis Del Favero Orchids, brings this action seeking damages and injunctive relief against employees of the Florida Department of Health and injunctive relief against the Florida Department of Health, and alleges as follows:

1.      This is an action for damages, injunctive relief, attorney's fees, and costs for the deprivation of Plaintiff's rights secured by 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the 42 U.S.C. §1983 claim pursuant to 28 U.S.C.

§§1331 and 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this cause of action arose out of this district and the defendants reside in this district.

## PARTIES

4.      Louis Del Favero Orchids, Inc. is a Florida corporation with its principal place of business at 6601 Gant Road, Tampa, Florida.  Del Favero has been registered to do business in the State of Florida for more than five years.  Del Favero possesses a valid certificate of registration issued by the Department of Agriculture and Consumer Services pursuant to Section 581.131, Florida Statutes.  Del Favero qualifies for designation as a medical marijuana treatment facility.  Del Favero has expended substantial resources seeking designation as a medical marijuana treatment facility, including a request for registration, purchase of a citrus facility, and submittal of an application to the Department of Health along with a $60,830 application fee.

5.      Defendant, Department of Health ("Department") is an executive branch agency of the State of Florida created pursuant to Section 20.43, Florida Statutes.  The Department has a constitutional duty, pursuant to the Constitutional Amendment, to ensure the availability and safe use of medical marijuana by qualifying patients and to register Medical Marijuana Treatment Centers ("MMTCs").  The Florida Legislature has directed the Department to license MMTCs pursuant to Section 381.986, Florida Statutes and Section 385.212, Florida Statutes.

6.      Defendant Christian Bax is a citizen of the United States and, at all times relevant, the Northern District of Florida. Defendant Bax is the former Director for the Office of Medical Marijuana Use at the Florida Department of Health. At all times relevant, Defendant Bax had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

7       Defendant Courtney Coppola is a citizen of the United States and the Northern District of Florida. Defendant Coppola is the Director of the Office of Medical Marijuana Use at the Florida Department of Health. At all times relevant, Defendant Coppola had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

8.       Defendant Celeste Phillip is a citizen of the United States and, at all times relevant, the Northern District of Florida. Defendant Phillip is the former Surgeon General and Secretary of the Florida Department of Health. At all times relevant, Defendant Phillip had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

9.       Defendant Scott Rivkees is a citizen of the United States and the Northern District of Florida. Defendant Rivkees is the State Surgeon General and Secretary of the Florida Department of Health. At all times relevant, Defendant Rivkees had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

10.       Defendant Louise St. Laurent is a citizen of the United States and the Northern District of Florida. Defendant St. Laurent is the General Counsel for the Office of Medical Marijuana Use at the Florida Department of Health. At all times relevant, Defendant St. Laurent had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

11.       Defendant John Doe 1 is a citizen of the United States and, on information and belief, the Northern District of Florida. This Defendant is an unidentified individual working at the Florida Department of Health or Florida's Executive Branch who made the final decision not to open the application process for MMTC's within the nine-month timeframe required by Florida Law.

12.     Defendant John Doe 2 is a citizen of the United States and, on information and belief, the Northern District of Florida. This Defendant is an unidentified individual employed by the Florida Department of Health or Florida's Executive Branch who made the final decision to deny Del Favero's default license after the Department failed to review Del Favero's application for over ninety days. At all times relevant, this defendant had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

13.     Defendants John Doe 3-11 are citizens of the United States and, on information and belief, the Northern District of Florida. These Defendants are unidentified individuals who approved and drafted settlement agreements for eight applicants who received MMTC licenses since Del Favero has filed its application. At all times relevant, these defendants had authority over the acceptance, review, and denial of MMTC applications and acted under color of state law.

## FACTUAL ALLEGATIONS

### I.      The Compassionate Medical Cannabis Act of 2014

14.     In 2014, the Florida Legislature, through the Compassionate Medical Cannabis Act of 2014 (the "CMCA"), legalized the cultivation, processing, and dispensing of low-THC cannabis for certain qualified patients.  The CMCA, which was codified as Section 381.986, Florida Statutes (2014), directed the Department to license five "dispensing organizations," each in a different geographic region, for the purposes of supplying "low-THC cannabis" to qualified patients in Florida.

### II.     Constitutional Amendment Creates Right to Medical Marijuana

15.     In November 2016, the Florida Medical Marijuana Legalization Initiative, also known as Constitutional Amendment 2, was passed overwhelmingly by Florida voters.  It was

later codified in Article X, Section 29 of the Florida Constitution (the "Constitutional Amendment").

16.     The Constitutional Amendment enshrines in the Florida Constitution the right of qualifying patients to the medical use of marijuana for the treatment of debilitating conditions.

17.     The Constitutional Amendment also enshrines in the constitution a new category of business entities to engage in the lawful cultivation, production, and/or distribution of medical marijuana to qualifying patients, known as Medical Marijuana Treatment Centers.

18.     The Constitutional Amendment required the Department to promulgate regulations that provide for the Registration of MMTCs to secure "the availability and safe use of medical marijuana by qualifying patients."  Art. X, § 29, Fla. Const.

19.     These regulations must include "[p]rocedures for the issuance, renewal, suspension and revocation of registration, and standards to ensure proper security, record keeping, testing, labeling, inspection, and safety."  Art. X, § 29(d)(1)c., Fla. Const.

20.     The Constitutional Amendment placed an affirmative duty on the agency "to promulgate regulations in a timely fashion." Art. X, § 29(d), Fla. Const.

21.     Article X, Section 29 states "the Department shall begin issuing qualifying patient and identification cards and registering MMTCs no later than nine (9) months after the effective date of this legislation." Art. X, § 29(d)(2), Fla. Const. (emphasis added).

22.     The Constitutional Amendment explicitly provides that: "If the Department does not issue regulations, or if the Department does not begin issuing identification cards and registering MMTCs within the time limits set in this section, any Florida citizen shall have standing to seek judicial relief to compel compliance with the Department's constitutional duties."  Art. X, § 29(d)(3), Fla. Const.

23.     On January 3, 2017, the Constitutional Amendment took effect in the State of Florida.

### III.     The Medical Use of Marijuana Act of 2017

24.     During the Special Session convened from June 7, 2017 to June 9, 2017, the Florida Legislature enacted Senate Bill No. 8-A, described as "an act relating to the medical use of marijuana." This act became effective June 23, 2017, as Chapter 2017-232, Laws of Florida, later codified as Section 381.986, Florida Statutes (2017) ("Implementing Statute").

25.     The Implementing Statute was lengthy, detailed, and provided extensive instruction to the Department as to how to create and regulate the medical marijuana market in Florida.  At all times relevant to this Complaint, Section 381.986, Florida Statutes required the Department to license MMTCs. Section 3 of Chapter 2017-232, Laws of Florida, amended Section 381.986, Florida Statutes.

26.     Under the law, a limited number of MMTC licenses were to be awarded to applicants that qualify as MMTCs.  Section 381.986(8)(a)2.c., Florida Statutes required the Department to issue ten (10) licenses for new MMTCs no later than October 3, 2017.

27.     Section 381.986(8)(a)3., Florida Statutes contains a preference to applicants that own citrus processing facilities.  That statute provides as follows:

> For up to two of the licenses issued under subparagraph 2., the department shall give preference to applicants that demonstrate in their applications that they own one or more facilities that are, or were, used for the canning, concentrating, or otherwise processing of citrus fruit or citrus molasses and will use or convert the facility or facilities for the processing of marijuana.

*Id.*

28.     Subsequent to the passage of Section 381.986(8), Florida Statutes, the Department promulgated Florida Administrative Code Emergency Rule 64ER17-2, effective September 19,

2017. That Emergency Rule further clarified the manner in which a preference for MMTC applicants owning citrus processing facilities would be determined, and provides:

> (e) For applicants seeking preference for registration pursuant to section 381.986(8)(a)3., F.S., the applicant must provide evidence that:
>
> 1.      The property at issue currently is or was previously used for the canning, concentrating, or otherwise processing of citrus fruit or citrus molasses. In order to demonstrate the property meets this criteria the applicant may provide documentation that the applicant currently holds or has held a registration certificate or a citrus fruit dealer license pursuant to sections 601.40 and 601.55, F.S, respectively. A letter from the Department of Citrus certifying that the property currently is or was previously used for the canning, concentrating, or otherwise processing of citrus fruit or citrus molasses will be accepted as sufficient evidence;
>
> 2. The applicant as an individual holds, in his or her name, or the applicant as an entity holds, in the legal name of the entity the deed to property meeting the criteria set forth in subparagraph 1. above; and
>
> 3. A brief explanation of how the property will be used for purposes of growing, processing or dispensing medical marijuana if the applicant is awarded a license.

*See* Fla. Admin. Code Emergency R. 64-17-2(1)(e)1.-3.

29.     Following the passage of the Constitutional Amendment and the Medical Marijuana Use Act of 2017, Defendant Christian Bax was the director of Florida's Office of Medical Marijuana Use and responsible for reviewing and accepting MMTC applications provided by the Constitutional Amendment.

30.     Despite the Constitutional Amendment's requirement that the Department begin accepting applications by October 3, 2017, Defendant Bax failed to open the application process throughout his tenure as the Director of the Office of Medical Marijuana, which lasted until September 2018.

31.     During this time, Defendant John Doe 1 made the final decision that—contrary to the Constitutional Amendment's express mandate—that the Department of Health would not begin processing MMTC applications.

**IV.     Del Favero's Attempts to Comply with Prior Statutes and Rules**

32.     Del Favero has been registered to do business in the State of Florida for more than five years.  Del Favero possesses a valid certificate of registration issued by the Department of Agriculture and Consumer Services pursuant to Section 581.131, Florida Statutes.

33.     Del Favero reviewed Section 381.986, Florida Statutes shortly after that revised law went into effect on June 23, 2017.  Del Favero subsequently reviewed the requirements of Emergency Rule 64-17-2(1)(e), including the preference for applicants that own citrus processing facilities.

34.     Following the passage of Section 381.986, Florida Statutes, Del Favero investigated the availability of facilities that are or were used for the canning, concentrating, or other processing of citrus fruit or citrus molasses that would be suitable for conversion to facilities used for the processing of medical marijuana.

35.     Del Favero found several citrus processing facilities that would meet the requirements of Section 381.986(8)(a)3., Florida Statutes.  At that time, the Department of Citrus's website contained a list of more than twenty-five potential, qualifying citrus processing facilities available to MMTC applicants such as Del Favero.

36.     Del Favero contracted to purchase facilities that were used in citrus processing specifically for the purpose of converting those facilities for use in processing medical marijuana, and to obtain the preference available to any applicant that owned such facilities at the time of

application for a MMTC license.  Del Favero paid $775,000 for a citrus processing facility located at 3393 SR 580, Safety Harbor.  Del Favero now owns that citrus processing facility.

37.     In compliance with the Emergency Rule, Del Favero confirmed that the property it purchased has been licensed with both a registration certificate and citrus fruit dealer license pursuant to Sections 601.40 and 601.55, Florida Statutes.  Del Favero also confirmed that the property met the requirements of a qualifying property under Emergency Rule 64-17-2, regarding the use of citrus facilities for the purpose of processing medical cannabis.  Del Favero received a letter from the Florida Department of Citrus confirming the use of that citrus processing facility.

38.     Del Favero therefore drafted its application for MMTC registration following the application scheme set forth by the Department.

39     A Florida State Court, in *Florigrown et al., v. Florida Department of Health* et al., Case No. 2017-CA-002549 (Fla Ct. Ct. Leon County), entered a temporary injunction on October 5, 2018 declaring Section 381.986 "inconsistent with [the] constitution" and "(1) immediately enjoining the Department of Health from registering or licensing any MMTCs pursuant to the unconstitutional legislative scheme set forth in Section 381.986, Florida Statutes, (2) requiring the Department by 5:00 PM Friday, October 19, 2018 to commence registering MMTCs in accordance with the plain language of the Medical Marijuana Constitutional Amendment, and (3) requiring the Department to register Florigrown as an MMTC by 5:00 PM Friday, October 19, 2018, unless the Department can clearly demonstrate to this court that such registration would result in unsafe use of medical marijuana by qualifying patients."

40.     The Department appealed the Order of Injunction issued in Florigrown, and obtained a stay preventing its enforcement. Due to the stay, Section 381.986, Florida Statutes remains in effect. See *Fla. Dep't of Health, Office of Med. Marijuana Use*, *et. al vs Florigrown*,

*LLC, a Fla. limited liability company & Voice of Freedom, Inc., d/b/a Florigrown*, Case No. 1D18-4471, (Fla. 1st DCA).  Del Favero immediately began preparations to seek an MMTC registration with the Department in accordance with Florida law.

**V.     Del Favero's Application to Register as an MMTC**

41.     On October 8, 2018, Del Favero submitted to the Department its registration to operate a MMTC to Defendant Courtney Coppola, the Interim Director of the Office of Medical Marijuana Use for the Florida Department of Health. (Attached as Ex. "A").

42.     Defendant Courtney Coppola's actions were directly overseen by Defendant Celeste Phillip, the Surgeon General and Secretary of the Florida Department of Health.

43.     Following Defendant Phillip's departure, Defendant Courtney Coppola's actions were directly overseen by Defendant Scott Rivkees, who was appointed to the position of Surgeon General and Secretary of the Florida Department of Health appointment by Florida Governor, Ron DeSantis in April 2019.

44.     By October 17, 2018, Del Favero had heard no reply, and received no confirmation that Del Favero' Registration had been received by the Department or Defendant Coppola.

45.     On October 17, 2018, Del Favero submitted to the Department by hand delivery its completed application to operate a MMTC, including a check for $60,830.00 (Attached as Ex. "B") (collectively, the application and check are referred to as "Del Favero's License Application").

**VI.     The Department Has Not Acted on Del Favero's MMTC Application**

46.     The Department and its employees have failed to notify Del Favero of any apparent errors or omissions from its application.  As of May 17, 2019, the Department failed to take any action with respect to Del Favero's registration and application.

47.     After Del Favero submitted its application, Defendant Courtney Coppola, returned Del Favero's $60,830.00 check, via mail. The check was not returned until March 27, 2019—after the time that Florida law provides that applicants may obtain a default license for an agency's inaction in reviewing their application. *See* § 120.60(1) Fla. Stat. Indeed, the check was not returned until well after Del Favero made a demand for a default license under Florida law.

48.     The mailing containing the returned check did not explain why Del Favero's check was being returned or why Del Favero's application was not accepted. Because the $60,830.00 application fee is required for a MMTC to have their application reviewed and obtain a license, the returned check can only be construed as a denial of Del Favero's application.

49.     Neither Defendant Courtney Coppola nor the Department provided Del Favero an opportunity to respond or contest the denial of its application.

## VII.     Del Favero Sought and Was Denied a Default License Pursuant to Section 120.60, Florida Statutes

50.     Section 120.60(1), Florida Statutes provides as follows:

> Upon receipt of a license application, an agency shall examine the application and, within 30 days after such receipt, notify the applicant of any apparent errors or omissions and request any additional information the agency is permitted by law to require. An agency may not deny a license for failure to correct an error or omission or to supply additional information unless the agency timely notified the applicant within this 30-day period. The agency may establish by rule the time period for submitting any additional information requested by the agency. For good cause shown, the agency shall grant a request for an extension of time for submitting the additional information. If the applicant believes the agency's request for additional information is not authorized by law or rule, the agency, at the applicant's request, shall proceed to process the application. An application is complete upon receipt of all requested information and correction of any error or omission for which the applicant was timely notified or when the time for such notification

11

has expired. **An application for a license[1] must be approved or denied within 90 days after receipt of a completed application unless a shorter period of time for agency action is provided by law.** The 90-day time period is tolled by the initiation of a proceeding under ss. 120.569 and 120.57. Any application for a license which is not approved or denied within the 90-day or shorter time period, within 15 days after conclusion of a public hearing held on the application, or within 45 days after a recommended order is submitted to the agency and the parties, whichever action and timeframe is latest and applicable, is considered approved unless the recommended order recommends that the agency deny the license. Subject to the satisfactory completion of an examination if required as a prerequisite to licensure, any license that is considered approved shall be issued and may include such reasonable conditions as are authorized by law. **Any applicant for licensure seeking to claim licensure by default under this subsection shall notify the agency clerk of the licensing agency, in writing, of the intent to rely upon the default license provision of this subsection, and may not take any action based upon the default license until after receipt of such notice by the agency clerk.**

§ 120.60(1), Fla. Stat. (2018) (Emphasis supplied).

51.     On January 17, 2019, Del Favero filed with the Department's agency clerk a Notice to Claim Licensure by Default Under Section 120.60(1), Florida Statutes. In this notice, Del Favero informed the Department that Del Favero filed a complete application on October 17, 2018, that Del Favero had received no notices or communications from the Department regarding the status of Del Favero's application, and that Del Favero was notifying the Department of Del Favero's claim to licensure by default pursuant to Section 120.60(1), Florida Statutes. A copy of Del Favero's Notice is attached as Exhibit "C".

---

[1] Section 120.52(10) provides: " 'License' means a franchise, permit, certification, **registration**, charter, or **similar form of authorization required by law**, but it does not include a license required primarily for revenue purposes when issuance of the license is merely a ministerial act." *Id.* ("Emphasis supplied").

52.     Shortly after Del Favero sent this letter, an unidentified employee of the Department or Florida's Executive Branch—Defendant John Doe 1—made the final decision to deny Del Favero's default license.

53.     On January 22, 2019, Defendant Louise St. Laurent, the Department's General Counsel, sent a letter[2] to counsel for Del Favero in which the Department admitted that it had taken no action on Del Favero's application within 90 days of receipt. Despite the Department's failure to register MMTC registrants within the time frame provided in the Constitutional Amendment, the Department reasserted its position that the constitutional nine-month deadline did not apply to the Department and that the Department was free to ignore it indefinitely. The Department also announced that it had no duty to follow Florida law:

> Within the Constitutional Regulation, the Department specifically and expressly provided that it would publish notice to the public of when the Department will begin accepting applications along with a deadline to submit applications for registration as a Medical Marijuana Treatment. No such dates or deadlines have been published by the Department yet. Thus, there has not been, nor is there any, open application period. Accordingly, Del Favero's purported application was premature, untimely, and did not trigger any obligation for the Department to take action.
>
> . . .
>
> Your letter purports to give notice under section 120.60(1), Florida Statutes, of Del Favero's intent to rely on default licensure. Because Del Favero's request was made pursuant to Article X, Section 29 of the Florida Constitution, chapter 120, Florida Statutes, is entirely inapplicable. Any argument to the contrary is erroneous and contradicts Del Favero's representations to the Circuit Court of the Second Judicial Circuit in paragraph 31 of Del Favero's Complaint in case number 2017-CA- 2549.

54.     The Department's letter closed with a warning:

---

[2] Attached as Exhibit "D".

It is worth noting that cannabis remains illegal in Florida and cannot be grown, processed, dispensed, or sold, in this state unless approved by the Department and within the confines of applicable law. Del Favero does not hold any license or other registration under section 381.986, Florida Statutes, or any other law and therefore is not authorized or approved by the Department to operate as a Medical Marijuana Treatment Center. Del Favero should govern itself accordingly.

55.    Despite Defendant St. Laurent's warning that Del Favero did not hold any license under § 381.986 or "any other law," Defendant St. Laurent cited to no case law, to no statute, nor to any constitutional provision to support such assertion. Nor did the warning provide a point of entry to challenge the Department's position. Nor did the warning provide guidance as to the timeframe, if any, when the Department *would* accept an application from Del Favero or any other applicant.

56.    The Department's and Defendant Louise St. Laurent's January 22, 2019 letter made no attempt to comport with any conception of due process within the American legal tradition.

57.    Because neither the Department nor Defendant Louise St. Laurent provided a point of entry to contest the denial of a default license, Del Favero had no opportunity to challenge the Department's baseless assertions in its January 22, 2019 letter.

58.    By failing to take action on Del Favero's application within 90 days as required by Section 120.60, Florida Statutes, the Department permanently waived its discretion to make a determination whether Del Favero is entitled to a license, if any such discretion remained after failing to act on registration within 9 months of the effective date of the Constitutional Amendment.

59.    Del Favero was entitled to licensure by default pursuant to Section 120.60(1), Florida Statutes.

**VIII.  The Department Has Issued Licenses to Other MMTCs During the Time That it Has Failed to Take Action on Del Favero's Application**

60.     On April 19, 2019, the Department entered final orders indicating the Department's intent to grant licenses to eight additional MMTCs, despite the Department's earlier assertion in a prior administrative proceeding that six of these eight applicants do not qualify for a license under Section 381-986(8)(a)2.a.  *See* DOAH Cases, 18-4463, 18-4471, 18-4472, 18-4473, 18-4474, and 18-4698 ("Consolidated Cases"). Del Favero filed motions to intervene in each case. The Final Orders are attached as Composite Exhibit E ("Final Orders").

61.     In these prior administrative proceedings, six proposed licensees – Dewar Nurseries, Inc., Spring Oaks Greenhouses, Inc., Tree King – Tree Farm, Inc., Perkins Nursery, Inc., Bill's Nursery, Inc., and DeLeons Bromeliads, Inc. – challenged the Department's denial of their requests for MMTC licensure pursuant to the "one-point" provision of Section 381.986(8)(a)2.a. Each alleged that they were within "one point" of the highest final ranking of applications received under a prior version of Section 381.986, Florida Statutes. Initially, the Department denied that any of these petitioners were within one point of the highest final ranking, and cited score sheets to support its position.

62.     The Administrative Law Judge ("ALJ") held a status conference on September 6, 2018 for the Consolidated Cases. During this status conference, it came to the ALJ's attention that the number of MMTC licenses available would "likely have a substantial impact on how the proceedings in DOAH Case Nos. 18-4463, 18-4471, 18-4472, 18-4473, and 18-4474 must be conducted."  See September 7, 2018 Order, attached as Exhibit F ("September 7 Order"). The September 7 Order required the following:

> 1. Petitioner shall file a response to the instant Order by September 14, 2018, addressing the Department of Health's assertion that the Petitioners in DOAH Case Nos. 18-4463, 18-4471, 18-4472, 18-

> 4473, and 18-4474 "are competing for only two available [medical marijuana treatment center] licenses."
>
> 2. By September 21, 2018, the Department of Health shall file a reply to Petitioner's Response.
>
> 3. Scheduling of the final hearing in this matter and a ruling on the Department of Health's Motion to Consolidate are deferred until resolution of the issue discussed herein.

*Id.*

63.     The ALJ also withheld ruling on Del Favero's motion to intervene until the ALJ determined whether the applicants were in fact competing for only a limited number of licenses. See Order Regarding Motions to Intervene, attached as Exhibit G.

64.     In the Department's Reply to Petitioners' Joint Response to September 7 Order, (attached as Ex. "H") the Department asserted that the one-point provision applied only to the 10 licenses issued pursuant to Section 381.986(8)(a)2.a., and that "only two licenses, if any at all" remain:

> Petitioners' contention that the number 10 as used in section 381.986(8)(a)2 (2017) is just a minimum is mistaken. As a state executive agency, the Department's powers are limited to those granted by the legislature and the Florida Constitution. *See, e.g., State of Fla., Dep't of Envtl. 13 Regulation v. Puckett Oil Co.*, 577 So. 2d 988, 991 (Fla. 1st DCA 1991); cf. *Decker v. Univ. of W. Fla.*, 85 So. 3d 571, 573 (Fla. 1st DCA 2012). The legislature did not direct the Department to issue "at least 10" licenses or "10 or more" licenses; the legislature authorized 10 licenses to be issued under section 381.986(8)(a)2, period. This is a matter of simple statutory construction. When Petitioners argue that section 381.986(8)(a)2.a's phrase shall license any applicant means the number 10 is a minimum, Petitioners ask DOAH to (impermissibly) delete the number 10 from the statute, *see, e.g., Westphal v. City of St. Petersburg*, 194 So. 3d 311, 321 (Fla. 2016) ("Although this Court must, whenever possible, construe statutes to effect a constitutional outcome, we may not salvage a plainly written statute by rewriting it.").
>
> When Petitioners filed their petitions in these matters, the Department had issued 7 of the 10 MMTC licenses under section

381.986(8)(a)2 (2017). This leaves only 3 of 10 spots available for licensure under section 381.986(8)(a)2 (2017). Of those 3, one is reserved for Pigford applicants. *See* § 381.986(8)(a)2.b, Fla. Stat. (2017). That leaves only 2 licenses, if any at all, available for Petitioners. Again, the Department contends none of the petitioners is qualified and that the remaining 2 licenses are to be awarded through a separate application batch.

Additionally and contrary to Petitioners' contention, section 381.986(8)(a)2.a (the OnePoint Provision) does not apply to the additional 4 licenses under the separate and distinct section 381.986(8)(a)4. The One-Point Provision authorizes licenses from the pool of 10 licenses under section 381.986(8)(a)2 only. *See* § 381.986(8)(a)2, Fla. Stat. (2017). This, too, is a matter of simple statutory construction. Indeed, when directing the Department to issue licenses under the One-Point Provision by August 2017, the legislature knew that the patient registry had not reached 100,000 active patients, and the legislature could not know when that would occur. In fact, it defies plain logic to argue that the legislature ordered that licenses be issued under the One-Point Provision by August 2017 but at the same time directed that some of those licenses be drawn from a set of 4 licenses sometime in the future, after August 2017.

Ex. H, pp. 12-14.

65.     The ALJ subsequently issued an Order to Show Cause Why Jurisdiction Should Not Be Relinquished to the Department of Health, attached as Exhibit I. ("Order to Show Cause"). In the Order to Show Cause, the ALJ held as follows:

The undersigned is also aware of the ruling in Nature's Way Nursery of Miami that the emergency rule adopted by the Department to implement section 381.986(8)(a)2.a., is an invalid exercise of delegated legislative authority. However, pursuant to the statutory "one point condition" in section 381.986(8)(a)2.a., there are no disputed issues of material fact that, if resolved, could qualify Petitioner for registration as a medical marijuana treatment center. *Id.* (emphasis supplied).

66.      The ALJ then ordered the following:

Accordingly, within five days from issuance of the instant Order, the parties shall show cause why the undersigned should not

17

relinquish jurisdiction to the Department for entry of a final order. See § 120.57(1)(i), Fla. Stat. (2018) (mandating that "[a]n order relinquishing jurisdiction shall be rendered if the administrative law judge determines from the pleadings . . . that no genuine issues as to any material fact exists").

*Id.*

67.     The Department successfully argued – and the ALJ ultimately agreed – that there were no disputed issues of material fact that, if resolved, could qualify Petitioner[s] for registration as a medical marijuana treatment center. In the Department's Response to Show-Cause Order, attached as Exhibit J, the Department argued that none of the petitioners qualified for a license pursuant to section 381.986(8)(a)2.a.:

> Resolution of these licensing matters turns entirely on interpretation of a provision found in section 381.986, Florida Statutes (2018), Florida's primary medical-marijuana statute. Each Petitioner claims that it qualifies under a specific and narrow provision of law for one of a very limited number of medical marijuana treatment center (MMTC) licenses. More specifically, each Petitioner claims it is entitled to licensure under section 381.986(8)(a)2.a., Florida Statutes, which directs the Department to license qualifying 2015 applicants that had final rankings within one point of the highest final ranking in their regions under former section 381.986, Florida Statutes (2014) (the One-Point Statute).

> To be sure, none of the Petitioners qualifies, as explained in the Department's denial letters attached to the petitions. Indeed, the final rankings earned by Petitioners in 2015 are not disputed. It is also not disputed that one Petitioner—TropiFlora, LLC—did not even receive a final ranking because its application was not evaluated and scored. Yet each and every Petitioner claims it was within one point of the best applicant in its region. The One-Point Statute calls for the application of basic math. Simple subtraction shows that none of the Petitioners can satisfy the statutory requirement. The One-Point Statute can be applied to deny Petitioners' 2018 requests for MMTC licensure without regard to any allegedly unadopted or otherwise allegedly invalid rules.

Ex. J, pp. 1-2.

68.     The Department's Response to Show-Cause Order was supported by competent substantial evidence in the form of legislative history and score sheets.

69.     On October 18, 2019, DOAH relinquished jurisdiction back to the Department.

70.     In the Final Orders issued on April 19, 2019, the Department changed its factual position that it asserted to the ALJ and took the opposite factual position: now the Department asserted that the applicants qualified for MMTC licenses.  Because the Department changed its factual position after jurisdiction was relinquished to the Department, no other applicant, including Del Favero, was afforded a point of entry to challenge the Department's changed factual position. In short, the Department disputed its own facts that it asserted were undisputed in the administrative proceeding but has failed to remand jurisdiction back to the fact finder to resolve that dispute.

71.      These eight additional licenses were ultimately issued by unidentified individuals working for the Department or the State of Florida's Executive Branch: Defendants John Doe 3-11. The Department has modified the ALJ's findings of fact that were supported by competent substantial evidence in the consolidated cases.

72.     Some of these applicants, such as Bill's Nursery Inc. and DeLeon's Bromeliads, Inc. have also intervened in the *Florigrown* case in the same manner as Del Favero. Bill's Nursery Inc. filed with the Department a registration that is substantially the same as Del Favero's. Yet the Department did not deny Bill's Nursery Inc. a license on the grounds the application process is closed. The Department, rather, granted Bill's Nursery Inc. a license. *See* Ex. E. Unlike Del Favero, these licensees never filed completed applications after the Implementing Statute was enacted.

## IX.    The Department's Failure to Provide Del Favero Due Process

73.     As of May 17, 2019, the Department has failed to review Del Favero's MMTC application, has failed to provide notice of any deficiencies in said application, has failed to provide Del Favero an opportunity to correct any of said deficiencies, and has failed to provide Del Favero an opportunity to be heard to contest any of such deficiencies.

74.     The only justification asserted by the Department and its employees—that the application process has not yet opened—is belied by the fact Florida law requires the Department to review of Del Favero's application and the fact that the Department has issued final orders purporting to award at least eight (8) other licenses.

75.     This conduct deprived Del Favero of property interests conferred under the non-discretionary provisions of the Constitutional Amendment and Implementing Statute, which required the Department to review Del Favero's application and grant Del Favero a default license when the Department failed to do so after ninety (90) days.

76.     Furthermore, the Department and its employees' failure to review Del Favero's Application is equivalent to a denial of its application, because the Department has taken the position that only ten (10) MMTC licenses are available. Thus, the Department's failure to act on Del Favero's application in accordance with Florida law has deprived it of the ability to obtain one of the ten (10) available licenses, even though Del Favero meets all requirements for such a license under Florida law.

77.     Del Favero has no adequate remedy available to it under state law, because its relief under Florida law is limited to a Mandamus action or action for declaratory relief to obtain review of their license. This relief cannot compensate Del Favero for the substantial losses it has already incurred as a result of the Department's failure to consider Del Favero's application. Furthermore, the state court proceedings regarding the default license provided Del Favero no opportunity to

challenge the eight (8) other MMTC's who have been granted a license. Thus, even if Del Favero is successful in these state court proceedings—all or a substantial number of the available licenses will already be gone by the time these independent state law actions conclude. Thus, even if Del Favero prevails in state court litigation, Florida law affords it no adequate remedy. Even assuming Del Favero would successfully be able to intervene in the Consolidated Cases, the eight other licenses will be operational long before briefing on that issue is complete.

78.     Due process requires the Department to provide Del Favero with notice and an opportunity to be heard before denying Del Favero an opportunity to obtain one of the ten (10) available licenses.

79.     Indeed, the Department has itself recognized Del Favero's right to have its application considered with the other MMTC's who have submitted applications. When Del Favero sought a temporary injunction to obtain a default license, the Department filed a Response, arguing *inter alia* that Del Favero did not have standing to bring such a claim as an intervenor. (Defendants' Response in Opposition to Intervenor Louis Del Favero Orchids, Inc.'s Emergency Ex Parte Motion for Temporary Injunction filed April 25, 2019, attached as "Ex. K"). Notably, in arguing that Del Favero was not entitled to a default license, the Department argued:

> Finally, even if section 120.60(1) somehow applied to the Department acting pursuant to its constitutional powers under Article X, section 29, it still cannot be used to obtain a default license where the number of licenses are limited and subject to a comparative application process. For example, **Florida courts have recognized the principle that where more than one applicant seeks to apply for a limited or set number of licenses, and the applications are mutually exclusive, there is a right to a comparative evaluation of those competing applications**. *See, e.g.*, *Gulf Court Nursing Ctr. v. Dep't of Health & Rehab. Servs.*, 483 So. 2d 700, 704 (Fla. 1st DCA 1985) (discussing Florida courts' recognition of the *Ashbacker* doctrine which provides that "[a]n administrative agency is not to grant one application for a license without some appropriate consideration of another bona fide and

21

timely filed application to render the same service" (quoting *Biomedical Applications of Clearwater, Inc. v. Dept. of Health & Rehabilitative Serv.*,370 So. 2d 19, 23 (Fla. 2d DCA 1979))). **Similarly, LDF cannot assert a right to a default license here under section 120.60(1) because there is a limited pool of available MMTC licenses. To recognize otherwise would allow one prospective applicant to leapfrog over the rights of other competing applicants.**

Ex. K at 9–10 (emphasis added).

80.     Despite unequivocally recognizing Del Favero's right to have its application considered along with the other MMTC licensees, the Department and its employees have failed to provide Del Favero any such consideration.

81.     Indeed, by granting others licenses while failing to open the application process, the Department has done to Del Favero what it accuses Del Favero of doing to other licensees: allowing others to "leapfrog" over Del Favero's rights.

82.     These actions fail to comport with the basic requirements of due process.

<u>COUNT I</u>
<u>EX PARTE YOUNG-</u>
<u>FOURTEENTH AMENDMENT DENIAL OF PROCEDURAL DUE PROCESS</u>
**(Defendant Rivkees in His Official Capacity as Surgeon General and Secretary for the Florida Department of Health)**

83.     Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

84.     Del Favero enjoys a state-created property interest in having its application to be a Medical Marijuana Treatment Center reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

85.     Defendant the Florida Department of Health deprived Plaintiff this property interest by refusing to review Plaintiff's application in violation of these provisions. While

Plaintiff's application has not been reviewed, the Department has issued final orders purporting to award licenses to eight (8) other MMTC licensees.

86.     Because the Department has taken the position that the Florida Legislature has only authorized it to award ten (10) MMTC licenses, its failure to review Del Favero's Application in accordance with Florida law is tantamount to a denial of its application.

87.     Further, in accordance with Section 120.60(1), Florida Statutes, Del Favero was entitled to a default license when the Department failed to review its MMTC application within 90 days after receipt.

88.     The Department deprived Del Favero of this property interest by denying the default license and sending a letter with an implied threat of criminal prosecution if Del Favero acted on the default license to which it was entitled under Florida law.

89.     Del Favero has been and continues to be deprived of these property interests without being provided notice as to why Del Favero's application has not been reviewed or an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

90.     Plaintiff has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

91.      Additionally, the injury Plaintiff suffered as a result of the Department of Health's actions is likewise severe, as Plaintiff spent over $775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

92.     By contrast, The Florida Department of Health's failure to review Plaintiff's application, as required by Florida law, serves no legitimate government purpose.

93.     As a direct and proximate result of the Florida Department of Health's actions or inactions, Plaintiff suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits as a result of the Department's failure review their application.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Florida Department of Health for:

(a)     injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(b)     reasonable costs and attorney's fees.

(c)     any other relief this Court deems just and proper

**COUNT II**
**42 U.S.C. § 1983- FOURTEENTH AMENDMENT**
**DENIAL OF PROCEDURAL DUE PROCESS**
**(Defendant Bax)**

94.     Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

95.     Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

96.     Defendant Bax deprived Del Favero this property interest by refusing to review MMTC applications within the period required by Article X, Section 29 of the Florida Constitution while he occupied the position of Director of the Office of Medical Marijuana.

97.     Del Favero has been deprived of this property interest without being provided notice as to why Del Favero was not permitted to apply for a license or be given an opportunity

to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

98.    Plaintiff has a strong interest in retaining its property interest, as the value of the license it seeks is worth hundreds of millions of dollars.

99.    Additionally, the injury suffered as a result of Defendant Bax's actions is likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

100.    By contrast, Defendant Bax's actions of failing to review MMTC applications as required by Florida law, served no legitimate government purpose.

101.    As a direct and proximate result of Defendant Bax's actions or inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits as a result of Defendant Bax's failing to review their application.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant Christian Bax for:

(a)    actual and compensatory damages;

(b)    punitive damages

(c)    injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)    reasonable costs and attorney's fees.

(e)    any other relief this Court deems just and proper.

**COUNT III**
**42 U.S.C. § 1983- FOURTEENTH AMENDMENT**
**DENIAL OF PROCEDURAL DUE PROCESS**
**(Defendant Coppola)**

102.     Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

103.     Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

104.     Defendant Coppola deprived Del Favero this property interest by failing to review Del Favero's MMTC application—which it submitted to her in October 2018. While Plaintiff's application has not been reviewed, the Department has issued final orders purporting to award eight (8) other MMTC licenses.

105.     Because the Department has taken the position that the Florida Legislature has only authorized it to award ten (10) MMTC licenses, its failure to review Del Favero's Application in accordance with Florida law is tantamount to a denial of its application.

106.     Del Favero has been deprived of this property interest without being provided notice as to why it was not permitted to apply for a license or be given an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

107.     Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

108.     Additionally, the injury suffered as a result of Defendant Coppola's actions are likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

109.     By contrast, Defendant Coppola's failure to review MMTC applications as required by Florida law, served no legitimate government purpose.

26

110.    As a direct and proximate result of Defendant Coppola's actions or inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits as a result of Defendant Coppola's failure to review its application.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant Courtney Coppola for:

(a)     actual and compensatory damages;

(b)     punitive damages

(c)     injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)     reasonable costs and attorney's fees.

(e)     any other relief this Court deems just and proper.

**COUNT IV**
**42 U.S.C. § 1983- FOURTEENTH AMENDMENT**
**DENIAL OF PROCEDURAL DUE PROCESS**
**(Defendant Phillip)**

111.    Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

112.    Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

113.    Defendant Phillip deprived Del Favero this property interest by failing to review Del Favero's MMTC application—which it submitted in October 2018—throughout Defendant Phillip's tenure in the position of Surgeon General and Secretary of the Florida Department of

Health. While Plaintiff's application has not been reviewed, the Department issued final orders purporting to award eight (8) other MMTC licenses.

114.    Because the Department has taken the position that the Florida Legislature has only authorized it to award ten (10) MMTC licenses, its failure to review Del Favero's Application in accordance with Florida law is tantamount to a denial of its application.

115.    Del Favero has been deprived of this property interest without being provided notice as to why it was not permitted to apply for a license or be given an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

116    Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

117.    Additionally, the injury suffered as a result of Defendant Phillip's actions are likewise severe, as Plaintiff spent over $775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

118.    By contrast, Defendant Phillip's failure to review MMTC applications as required by Florida law, served no legitimate government purpose.

119.    As a direct and proximate result of Defendant Phillip's actions or inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits as a result of Defendant Phillip's failure to review its application.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant Celeste Phillip for:

(a)    actual and compensatory damages;

(b)  punitive damages

(c)  injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)  reasonable costs and attorney's fees.

(e)  any other relief this Court deems just and proper.

**COUNT V**
**42 U.S.C. § 1983- FOURTEENTH AMENDMENT**
**DENIAL OF PROCEDURAL DUE PROCESS**
**(Defendant Rivkees)**

120.  Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

121.  Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

122.  Defendant Rivkees deprived Del Favero this property interest by failing to review Del Favero's MMTC application—which it submitted in October 2018—throughout Defendant Rivkee's tenure in the position as Surgeon General and Secretary of the Department of Health. While Plaintiff's application has not been reviewed, the Department issued final orders purporting to award eight (8) other MMTC licenses.

123  Because the Department has taken the position that the Florida Legislature has only authorized it to award ten (10) MMTC licenses, its failure to review Del Favero's Application in accordance with Florida law is tantamount to a denial of its application.

124.  Del Favero has been deprived of this property interest without being provided notice as to why it was not permitted to apply for a license or be given an opportunity to be heard

as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

125.     Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

126.     Additionally, the injury suffered as a result of Defendant Rivkees's actions are likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

127.     By contrast, Defendant Rivkees's failure to review MMTC applications as required by Florida law, served no legitimate government purpose.

128.     As a direct and proximate result of Defendant Rivkees's actions or inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits as a result of Defendant Rivkee's failure to review its application.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant Scott Rivkees for:

(a)      actual and compensatory damages;

(b)      punitive damages

(c)      injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)      reasonable costs and attorney's fees.

(e)      any other relief this Court deems just and proper.

**COUNT VI**
**42 U.S.C. § 1983- FOURTEENTH AMENDMENT**
**DENIAL OF PROCEDURAL DUE PROCESS**
**(Defendant St. Laurent)**

129.   Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

130.   Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

131.   Defendant St. Laurent deprived Del Favero this property interest by failing to review Del Favero's MMTC application—which it submitted in October 2018—throughout Defendant St. Laurent's tenure in the position as General Counsel of the Department of Health. While Plaintiff's application has not been reviewed. While Plaintiff's application has not been reviewed, the Department issued final orders purporting to award eight (8) other MMTC licenses.

132.   Because the Department has taken the position that the Florida Legislature has only authorized it to award ten (10) MMTC licenses, its failure to review Del Favero's Application in accordance with Florida law is tantamount to a denial of its application.

133.   Further, in accordance with Section 120.60(1), Florida Statutes, Del Favero was entitled to a default license when the Department failed to review its MMTC application within 90 days after receipt.

134.   Defendant St. Laurent deprived Del Favero of this property interest by denying the default license and sending a letter with an implied threat of criminal prosecution if Del Favero acted on the default license to which it was entitled under Florida law.

135.   Del Favero has been deprived of these property interests without being provided notice as to why its license was not reviewed or why it was not permitted a default license. Nor

was Del Favero given an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

136.     Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

137.     Additionally, the injury suffered as a result of Defendant St. Laurent's actions are likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

138.     By contrast, Defendant Laurent's failure to review Del Favero's MMTC application and grant Del Favero a default license as required by Florida law, served no legitimate government purpose.

139.     As a direct and proximate result of Defendant St. Laurent's actions and inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant Louise St. Laurent for:

(a)     actual and compensatory damages;

(b)     punitive damages

(c)     injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)     reasonable costs and attorney's fees.

(e)     any other relief this Court deems just and proper.

**COUNT VII**
**42 U.S.C. § 1983 FOURTEENTH AMENDMENT**
**DENIAL OF PROCEDURAL DUE PROCESS**
**(Defendant John Doe 1)**

140.    Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

141.    Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

142.    Defendant John Doe 1 deprived Del Favero this property interest by refusing to open review for MMTC applications within the period required by Article X, Section 29 of the Florida Constitution.

143.    Del Favero has been deprived of this property interest without being provided notice as to why it was not permitted to apply for a license or be given an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. While Plaintiff's application has not been reviewed, the Department issued final orders purporting to award eight (8) other MMTC licenses.

144.    Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

145.    Additionally, the injury suffered as a result of Defendant John Doe 1's actions are likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

146.    By contrast, Defendant John Doe 1's failure to open the review process for MMTC applications, as required by Florida law, served no legitimate government purpose.

147.    Indeed, Defendant John Doe 1's actions expressly violated the Florida Constitution.

148.    As a direct and proximate result of Defendant John Doe 1's actions or inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits as a result of Defendant John Doe 1's failure to review their application.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant John Doe 1 for:

(a)    actual and compensatory damages;

(b)    punitive damages

(c)    injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)    reasonable costs and attorney's fees.

(e)    any other relief this Court deems just and proper.

### COUNT VIII
### 42 U.S.C. § 1983- FOURTEENTH AMENDMENT
### DENIAL OF PROCEDURAL DUE PROCESS
**(Defendant John Doe 2)**

149.    Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

150.    Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

151.    Further, in accordance with Section 120.60(1), Florida Statutes, Del Favero was entitled to a default license when the Department failed to review its MMTC application within 90 days after receipt. While Plaintiff's application has not been reviewed, the Department has issued final orders purporting to award eight (8) other MMTC licenses.

152.     Defendant John Doe 2 deprived Del Favero of this property interest by making the final decision to deny del Favero's default license.

153.     Del Favero has been deprived of these property interests without being provided notice why it was not permitted a default license. Nor was Del Favero given an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

154.     Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

155.     Additionally, the injury suffered as a result of Defendant John Doe 2's actions are likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

156.     By contrast, Defendant John Doe 2's decision not to review Del Favero's MMTC application and deny Del Favero a default license as required by Florida law, served no legitimate government purpose.

157.     As a direct and proximate result of Defendant John Doe 2's actions and inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant John Doe 2 for:

(a)     actual and compensatory damages;

(b)     punitive damages

(c)     injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)     reasonable costs and attorney's fees.

(e)     any other relief this Court deems just and proper.

## COUNT IX
## 42 U.S.C. § 1983- FOURTEENTH AMENDMENT
## DENIAL OF PROCEDURAL DUE PROCESS
### (Defendant John Doe 3-11)

158.    Del Favero realleges and incorporates by reference all allegations contained in paragraphs 1-82.

159.    Del Favero enjoys a state-created property interest in having its MMTC application reviewed by the Florida Department of Health in accordance with Article X, Section 29 of the Florida Constitution and Section 281.986 Florida Statutes.

160.    Defendants John Doe 3-11 by making the final decisions to issue final orders purporting to award eight (8) other MMTC applicants licenses while failing to review Del Favero's application.

161.    Because the Department has taken the position that the Florida Legislature has only authorized it to award ten (10) MMTC licenses, its failure to review Del Favero's application in accordance with Florida law is tantamount to a denial of its application.

162.    Del Favero has been deprived of these property interests without being provided notice why it was not permitted a default license. Nor was Del Favero given an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

163.    Del Favero has a strong interest in retaining its property interest, as the value of the license it seeks is worth millions of dollars.

164.    Additionally, the injury suffered as a result of Defendant John Doe 3-11's actions are likewise severe, as Plaintiff spent over $ 775,000 in order to meet the requirements to apply for a license and the citrus facility preference provision.

165.    By contrast, Defendant John Doe 3-11's failure to review Del Favero's MMTC application served no legitimate government purpose.

166.    As a direct and proximate result of Defendant John Doe 3-11's actions and inactions, Del Favero suffered damages, including but not limited to, expenses incurred in seeking to meet the requirement for licensure and lost profits.

WHEREFORE, Plaintiff Louis Del Favero Orchids, Inc. demands judgment against the Defendant John Doe 3-11 for:

(a)    actual and compensatory damages;

(b)    punitive damages

(c)    injunctive relief to be granted notice and a hearing as required by the Due Process Clause.

(d)    reasonable costs and attorney's fees.

(e)    any other relief this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

DATED this 20th day of June 2019.

Respectfully submitted,


   */s/ Wm. J. Sheppard & Jesse B. Wilkison*
Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 55712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Camille E. Sheppard, Esquire
Florida Bar No.: 124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:    (904) 356-9661
Facsimile:    (904) 356-9667
Email:    sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF