UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LOUIS DEL FAVERO ORCHIDS, INC,
a Florida Corporation,

       Plaintiff,

vs.                               Case No.: 4:19-cv-00284-RH-MJF

SCOTT RIVKEES, individually and in his official
capacity as Surgeon General and Secretary of the
FLORIDA DEPARTMENT OF HEALTH;
CHRISTIAN BAX, individually;
COURTNEY COPPOLA, individually;
LOUISE ST. LAURENT, individually;
CELESTE PHILLIP, individually;
JOHN DOE # 1-11; individually,

       Defendants.
_____

**PLAINTIFF'S SURREPLY IN RESPONSE TO NAMED DEFENDANTS'
REPLY AND MOTION TO DISMISS**

      Pursuant to Local Rule 7.1(I) and this Court's Order granting Plaintiff leave, Plaintiff submits this surreply in opposition to the Named Defendants' Reply (Doc. 33).

      **I.    THE CSA DOES NOT PRECLUDE DEL FAVERO FROM POSSESSING A PROPERTY INTEREST IN AN MMTC LICENSE.**

  A.    The Federal Constitution, Not Federal Statutes, Determines Whether State Law Rises to the Level of a Constitutionally Protected Property Interest.

      The CSA does not preclude Del Favero from asserting a property interest in

an MMTC license, because property interests are determined with reference to state not federal law. (*See* Doc. 29 at 3–4). However, the Supreme Court has noted that not all state-created property interests are protected by the Due Process Clause; rather, federal constitutional law governs which property interests may receive constitutional protection. *See Memphis Light, Gas, and Water Division v. Craft*, 436 U.S. 1, 11 (1978). The Named Defendants, and many of the cases they cite, leverage this rule from *Craft* to argue that state-created interests in medical marijuana use, distribution, and licensure enjoy no constitutional protection, because "federal law" ultimately determines if the Due Process Clause protects a state-created interest.(Doc. 33 at 2-3) (citing *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756–57 (2005)).

However, *Craft* and the decisions following it all unequivocally stated that the federal Constitution is the source of federal law that governs this determination. *See Craft*, 436 U.S. at 11 ("Although the underlying substantive interest is created by "an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.") (emphasis added); *Town of Castle Rock*, 545 U.S. at 757 ("That determination, despite its state-law underpinnings, is ultimately one of federal constitutional law.") (emphasis added); *Winkler v. Dekalb Cnty*, 648 F.2d 411, 414 (5th Cir. 1981) (quoting *Craft, supra*). Neither the facts nor the reasoning

2

of any of these decisions suggest that a federal statute may control which state-created property interests the federal Constitution protects.

Indeed, courts applying *Craft* as a bar to relief generally have only done so in situations where the state property interest at issue was not substantial enough to warrant constitutional protection. *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983) ("Only interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests. Whether an interest is that substantial depends on the security with which it is held under state law and its importance to its holder."); *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino County*, 825 F.2d 1404, 1409 (9th Cir. 1987) (same); *see also S&D Maintenance Co., Inc. v. Goldin*¸844 F.2d 962, 966–67 (2d Cir. 1988) (noting that, for property interests guaranteed by contracts, the due process clause protected only estates within the public sphere "characterized by a quality of either extreme dependence" or "permanence").

In other words, the *Craft* rule is a bar to constitutionalizing property interests that courts deem too insignificant to warrant protection. This is in accord with the general constitutional principle that an individual must receive a hearing before he is deprived of "any significant" property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Neither *Craft* nor any other published

3

decision has interpreted this rule to carve out a constitutional exception for property interests related to activities prohibited by federal statutes.

The Named Defendants rely on numerous unpublished decisions arising from district courts in two states—all of which contain identical due process analyses misapplying the rule from *Craft* in the same fashion. For example, *River North Properties, LLC v. City and County of Denver* cited *Craft* for the proposition that "federal law determines whether a particular interest rises to the level of a 'legitimate claim of entitlement,'" to justify its holding that the CSA precluded relief under §1983 for the plaintiffs loss of a tenant who leased plaintiff's premises to grow medical marijuana. Case No. 13-cv-01410; 2014 WL 7437048 (D. Colo. Dec. 30, 2014).

Similarly, *Barrios v. County of Tulare* cited *Craft* to support its conclusion that "federal laws" outlawing medical marijuana precluded plaintiffs from asserting a federally protected property interest. Case No. 1:13-cv-1665; 2014 WL 2174746 (E.D. Cal. May 23, 2014). Both decisions overlooked the fact that the "federal law" to which *Craft* explicitly referred was the Constitution, not federal statutes like the CSA. These cases fail to cite any published decisions holding that federal statues determine what is protected by the Due Process Clause. Rather, longstanding jurisprudence has held that federal <u>constitutional</u> law governs this issue. As such, these cases misapplying *Craft* hold no persuasive value.

### B.   Marijuana's Status as "Contraband" Under Federal Law Does Not Preclude Del Favero From Asserting a Property Right in an MMTC License Under Florida Law.

Along related lines, the Named Defendants argue that no person may have a constitutionally protected interest in items that Congress determines are "contraband *per se*." (Doc. 33 at 4–5). The case on which they—and the unpublished decisions they cite— rely for this proposition is *United States v. Jeffers*, 342 U.S. 48, 53 (1951). (Doc. 33 at 4) However, this argument once again misconstrues what the Supreme Court actually held on this issue. *Jeffers* dealt with whether marijuana seized by police following a warrantless search should be suppressed under the Fourth Amendment's exclusionary rule. *Id.* at 49. The government argued that Congress's declaration that "no property rights shall exist" in marijuana precluded the defendants from asserting a cognizable property interest protected by the Fourth Amendment. *Id.* at 52.

The Supreme Court disagreed with the government, finding that the contraband status of marijuana only precluded the defendant from having the marijuana returned to him, but otherwise held that marijuana's contraband status did not forfeit the defendants' Fourth Amendment property interest. *Id.* at 53. In doing so, the Court noted:

> We are of the opinion that Congress, in abrogating property rights in such goods, merely intended to aid in their forfeiture and thereby prevent the spread of the traffic in drugs rather than to abolish the exclusionary rule

5

> formulated by the courts in furtherance of the high purposes of the Fourth Amendment. Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial.

*Id.* at 53–54 (citations omitted). Therefore, despite being widely cited for this proposition, *Jeffers* does not hold that marijuana's status as "contraband" precludes a person from asserting any constitutional property interest therein. Rather, *Jeffers* held the opposite. As such, the authority which Defendants rely referring to this supposed rule against constitutional interests in "contraband *per se*" is likewise founded on a misreading of the Supreme Court decisions they cite and carries no persuasive value.

### C. The Rohrabacher-Farr Amendment Demonstrates Congress's Recognition of the Limited State-Law Immunity MMTC Licensure Affords.

The Named Defendants emphasize that the Rohrabacher-Farr Amendment was attached to an appropriations bill and did not overturn the CSA. (Doc. 33 at 9–11). However, an MMTC license does not afford its holder permission to violate the CSA. Rather, by the Florida Constitutional Amendment's express terms, such licenses merely confer a limited immunity under state law. *See* Art. X, §29(a)(3) Fla. Const.

The Rohrabacher-Farr Amendment, and congressional enactments like it, demonstrate that Congress recognizes state licenses as a tangible consideration in

the federal enforcement of the CSA with real legal weight. A person who sells large quantities of medical marijuana without an MMTC license in Florida can (and will) likely face prosecution by both state and federal officials. With a license, that same person stands to make millions of dollars from the sale of medical marijuana with assurances of immunity from state prosecution and de-facto immunity from federal prosecution during the Rohrabacher-Far Amendment's effective period.  The Department presently determines which category a person falls into without regard minimum requirements of due process.

As such, those in the latter category are limited to the few who somehow surmount the Department's opaque and arbitrary criteria for receiving a license—or more often, those who pay exorbitant sums in secondary markets for such licenses. (*See* Facebook Marketplace Post from MMTC Licensee—selling florida Dispensary Licenses for $60 Million asking price—attached as Exhibit A).Given the significance that both Congress and the Florida Constitution place on MMTC licensure, public policy strongly supports application of basic due process principles to determine who is eligible to receive one.

## II. THE ISSUE CERTIFIED TO THE FLORIDA SUPREME COURT IN THE *FLORIGROWN* LITIGATION DOES NOT PERMIT ABSTENTION.

Defendants contend that recent developments in the state-court *Florigrown* litigation underscore their arguments for abstention. (Doc. 33 at 11–13).

Specifically, they point to the fact that the Florida First District Court of Appeal certified as a question of great public importance (reviewable by the Florida Supreme Court), whether the Implementing Statute's oligopolistic licensing model violates the Florida Constitution. *Id.* (citing *Fla. Dep't of Health v. Florigrown, LLC*, 2019 WL 4019919 (Fla. 1st DCA Aug. 27, 2019).

As discussed in Del Favero's Consolidated Response, the *Florigrown* litigation does not permit abstention, because the state-law question at issue in that case does not control Del Favero's constitutional claims here. (*See* Doc. 29 at 23–25); *Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000) (noting that in order for abstention to be permitted, the unsettled question of state law "must be dispositive of the case or would materially alter the constitutional question presented."). The certified issue in *Florigrown* relates solely to whether the Implementing Statute's oligopolistic licensing model violates the Florida Constitution. *Florigrown, supra,* 2019 WL 4019919 at *1. By contrast, Del Favero's lawsuit here claims that the Department has failed to review its application under any standards; whether they are derived from the Implementing Statute or the Department's authority to issue licenses under the Florida Constitution.

In denying rehearing and certifying the issue in *Florigrown*, one Florida judge explained why the lawsuit does not impact the Department's constitutional authority or duty to issue licenses:

8

> Until supreme court review occurs, the existing legislatively established oligopolistic vertically-integrated market structure will remain operative due to all but certain stays of the trial court's and this Court's decisions. Properly regulated, medical marijuana serves an important public health goal in accord with the intent of a super-majority of Florida's voters. Remember, the people gave the Department broad constitutional-grounded powers to establish "standards to ensure proper security, record keeping, testing, labeling, inspection, and safety" in this new industry, a provision unaffected by the panel opinion and self-operative without *any* legislation. Art. XI §2(d)(1)c. Had the legislature passed no law, the Department's constitutional mandate to bring about the orderly production, possession and use of medical marijuana in Florida remained the same.

*Florigrown, supra*, 2019 WL 4019919 at *3 (Makar, J. Concurring).

Therefore, the *Florigrown* litigation does not present an unsettled question of state law that is material to Del Favero's Due Process claims. Furthermore, largely due to stays granted at the Department's request, this ongoing litigation has not prevented the Department from carrying out its constitutional duty to accept MMTC applications and grant licenses. As such, none of the developments in this litigation permit abstention or justify the Department's failure to afford MMTC applicants due process.

### III.   CONCLUSION

For the reasons stated above and in Del Favero's Consolidated Response to Defendants' Motions to Dismiss (Doc. 29), Defendants' Motions to dismiss should be denied.

Respectfully submitted,

*/s/ Jesse Wilkison*
Wm. J. Sheppard, Esquire
Florida Bar No.:  109154
Elizabeth L. White, Esquire
Florida Bar No.:  314560
Matthew R. Kachergus, Esquire
Florida Bar No.:  503282
Bryan E. DeMaggio, Esquire
Florida Bar No.:  055712
Jesse B. Wilkison, Esquire
Florida Bar No.:  118505
Camille E. Sheppard, Esquire
Florida Bar No.:  124518
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:  (904) 356-9661
Facsimile:   (904) 356-9667
Email:        sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F), the undersigned certifies that this motion and supporting memorandum of law comply with the word count requirements of Local Rule 7.1(F), containing 1,931 words.

*/s/ Jesse B. Wilkison*
ATTORNEY

10

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of October, a true copy of the foregoing was served upon the following by Electronic Mail:

>**Christopher Lunny, Esquire**
>**Radey Law Firm**
>**301 S. Bronough St**
>**Ste. 200**
>**Tallahassee, Florida 32301**

    /s/ Jesse Wilkison
    ATTORNEY